case 23-362 Phillips et al v Banks et al. And is it Mr. Bellantoni? Good morning, Your Honor. Good morning. You've reserved two minutes for a vote. Yes. When you're ready. Okay. Good morning. May it please the court. My name is Rory Bellantoni and I'm here representing the plaintiff appellants. I'd like to just jump right in and start on page 59 of the appendix as part of the SRO decision in this case. That the plaintiff is challenging as inadequate and not well-reasoned. The district court relied on this paragraph to a great extent and deferred to I guess the magistrate more than the district court called sound reasoning. In the last sentence of the first paragraph, the SRO writes aside from the three goals referenced above, and we'll get to those, review of the remaining annual goals and short-term objectives contained in the November 2019 IEP, which address OT, occupational therapy, PT, physical therapy, speech, language, and communication. Indicated that the annual goals developed by the CSE were appropriately aligned with the student's skill levels at the time the IEP was developed. I'd just like to note that there's no language in there consistent with Gallardo or Gagliardo, if that's how you pronounce it, and Andrew that talks about an IEP has to be designed to meet the unique needs of a child and to allow that child to get an educational benefit under Gagliardo. And that benefit is assigned as some progress in Andrew. But what's troubling is the first sentence when the SRO writes in this case, the evidence shows that the annual goals targeted one skill in reading and one skill in writing that was somewhat below the student's instructional level and one school in math that was likely too ambitious because while he may achieve it at some point in the future. Now, he says, I'm not convinced that he would be likely to master this skill in one year, which the IEP is supposed to set out goals that allow the child to master that skill. Or if not master, because I don't want to be accused of advocating for the best education possible. It's not what I'm here advocating for. The SRO uses that word master. So we've got three goals in the academic part of this student's IEP. Reading, writing, and arithmetic. One too ambitious, basically that is unrealistic. The other's too low, which are inadequate. For the seven skills, goals I should say, three that focus on academics did not meet the legal standards for being sufficient in the IEP. 50% of the goals in the IEP were not sufficient. And yet, the IHO, and then the SRO, finds that the IEP for the 2018-2019 school years are reasonable, appropriate, and they find on that analysis, the district provided the student with a fake, and yet throughout the analysis, there's the recognition that the student was not progressing, the student was not doing well. When the student moved to the student's private school in January of 2020, the student began to progress, and was doing much better than the student was doing in the public school. The 18-19 and 19-20 school years follow the 2017-18 school year, where the SRO found that the district denied the child a fake. And with that year, there's an issue of how much compensation the child can receive for that denial of a fake. The SRO decided that, well, if you file the IEP in May or April of 2020, then you're only entitled to receive compensatory education from two years back forward. I submit that the statute of limitations, which is when an action is commenced, has nothing to do with the injuries you can recover once you show there was a violation. The DOE in their papers called this denial of occupational therapy a discreet service or a discreet injury. We do have an auto accident case, and that's a discreet act, negligence on a particular day. Sure, the statute of limitations is set from that day three years forward. But you take an example like medical malpractice or product liability, you have two and a half years to start the lawsuit in a medical malpractice case. And if you commence the action timely, for let's say failure to diagnose cancer, you don't limit the injury to the time going forward that satisfies the statute of limitations. But the IEP, you had the, your clients had the IEP in November of the prior year. They didn't commence the action too late. Well, with the- What's the reason for that? With the 2017 case, the student- There's no reason offered. I'm sorry? There's no reason offered why there's no withholding of a fact by the school district. There was nothing that fits within the two kind of categories that allow for a tolling of the statute of limitations. I don't understand how they get to backdate it. When the student had moved to the private school in January, there were additional assessments done. And one involved vision therapy, but that isn't what we're talking about. We're talking about occupational therapy. There were evaluations and assessments that were done. Well, they moved the child in January, but they knew, because they knew that in their view, that the IEP was inadequate in November, right? In November of 2020? No, no, 2017. The parents, as the years progressed, began to feel that. I don't know if they expressed that in 2017, it might have been 2019-20 school year, where the father was upset that the child wasn't progressing and needed compensatory services. But in this case, if the course of action was started timely as to that 2017-18 school year, again, if this child needs compensatory services, and I guess there's two ways to assess them, either quantitatively or qualitatively. Here, without necessarily going into the quantitative analysis, the SRO gave the child an hour for an hour, two hours a week for the, I guess, eight weeks that were left in the 2017 school year, so you get 16 hours of compensatory education. The failure to give this child occupational therapy had a cumulative effect throughout the school year. I don't think you can, and I would submit that you cannot, break up the injury. The injury into 16 hours is what he would have gotten, but for the dialogue of faith. And what he would have gotten was occupational therapy that would have allowed him to advance in some of his other classes, in his other areas of education. And again, I submit that two hours a week for the entire school year would have a cumulative effect on the child's education that he's not going to get, or didn't get, with just 16 hours. This child is now 21, so that this case isn't as much about reimbursement for the past school years as it is that we're asking for additional time beyond the age of 21. Whether it's full services or the occupational therapy that he didn't get back when. And again, I'd submit that as long as the lawsuit was started timely, the district denied the child a fate. There's no law, there's no precedent that says he can't recover for the injuries. I'm not talking about a separate act, or a separate denial of fate. But where the IHO and the IHO were both found, there was a denial of fate to fashion a remedy that doesn't cure that entire school year. I'm not advocating we should go back to 2006, because he didn't get occupational therapy for 16 years. But within that school year, I believe that as long as the lawsuit is commenced timely, the child should be allowed to recover for that injury. Thank you, Mr. Bellatoni, and you do have two minutes for rebuttal. We'll hear from Mr. Liebman. Good morning, your honors. Josh Liebman for the Appellees. It's not correct to characterize any of the decisions at the administrative or district court level, as having concluded that any of the goals here or any of the IEPs here did not meet the applicable legal standard. Which is that the goals in their totality must have been reasonably calculated to enable the student's progress. Every expert adjudicator here has determined that that indeed was the case. And the notion as well that the student was stuck not making progress year on year is also belied by the record. The record reveals that, for example, the student's goals in year one at issue that's 17 to 18 school year, that the student anticipated meeting all of them, made progress towards I believe it's three of the four. And indeed, as the IHO noted, the parents expressed to DOE that they wanted the student to remain on the same educational trajectory. So in response to the student's demonstrated progress, DOE set new goals that were higher in recognition of his prior progress. And in turn, when some of those goals proved to be slightly miscalibrated, in the year that then followed, DOE recalibrated the goals, dynamically responding in an individualized manner to the way in which the student was progressing. So that falls well within the IDEA standard of reasonably calculating goals to further the child's progress. And again on this record, the district court was entirely proper to defer to the expert conclusions of both of these adjudicators. Who in the end are the ones who have core expertise as to the substantive adequacy of educational goals in similar matters. So for all those reasons on the merits as to the specific question of these three goals for year two, this court should affirm the district court's decision in all respects. So too the district court was again well within its capacious discretion here in affirming the compensatory award that the SRO fashioned of 16 hours of occupational therapy. In the context of this case, where the parents are seeking two and a half years of tuition reimbursement over a long and extended period. It is true that the 16 hours of occupational therapy over a two month period in year one was indeed a discreet failure of providing services. And my colleague suggests to the court that the occupational therapy services were integral, without which the general IEP sort of would collapse. There's no evidence that actually suggests that. And absent that evidence, it was well within the SRO and in turn the district court's broad discretion as to equitable remedy. To conclude here, that where DOE provided a FAPE in the final two years at issue, and provided a FAPE in the first year, save for this discreet 16 hour failure to provide these at home services, that a compensatory award of 16 hours furthers the IDEA's purposes. And the Supreme Court has made clear that the only restraint on the district court's broad discretion as to remedy is that a compensatory or other award must broadly further the IDEA's underlying purposes and goals. That was clearly the case here. And I would just note in passing as well, that as Judge Wesley pointed out, there's neither a basis in law nor in fact for the proposition that the parents can reach back behind the two year statute of limitations and seek recompense for matters that occurred before that period began. All the more so on this record, where the IHO at the beginning of these proceedings reached out to the parents affirmatively to give them the opportunity to be heard as to the limitations period, and the parents opted not to put in a position. Again, didn't raise that at every subsequent level as well. So the notion that one can bootstrap a remedy outside of the statute of limitations just doesn't hold up to any level of scrutiny. And in any event, there's no factual basis to do so in this case. So for all these reasons we'd ask the court to affirm, I'd welcome any questions the court may have. Thank you, Mr. Liebman. Thank you very much. Mr. Bellatoni, you have two minutes. With respect to the statute of limitations, the parents who counsel did respond, everybody stipulated that everything before the 17-18 school year was beyond the statute of limitations. I think originally in the DPC, counsel at the time was seeking some kind of compensatory education from 2006 forward, but the IHO opinion mentions that the parents stipulated, the ESRO opinion, to the fact that everything before that year was without a doubt outside the statute of limitations. So I'm only talking about as long as the DPC was filed within two years of that school year. And I- That effectively lets them do three years, doesn't it? I'm sorry, Judge? I mean, so on the last day of school they file it, and then they're entitled to piggyback the whole previous school year? That makes no sense. That makes no sense, this statute of limitations. I'm not saying piggyback for a different school year. I'm just taking your words. You said during the school years. Yes. As long as they file during the school years. So I gave you the hypothetical of filing on the last day of the school year, June 25th. Yes. So they'd be entitled to litigate the propriety of the child's education for three years back? Well, that's the thing, your honor. They are allowed. When the DPC is filed, the IHO- I don't think that's the law, but go ahead. The IHO doesn't have a discrete hearing. The IHO doesn't say, you filed on the last day, I want to hear about how the child received an injury under the IDA for the last day. The hearing pertains to the entire school year. The IEP for that school year would have been developed two and a half, three years before this. And Congress said nothing about filing within two years of the development of the IEP. It's when you knew or should have known that there was a problem with the IEP. And when was that, in November of that year, was it not? I would submit- When you got the IEP. November of 2017. I'm using your words. No, but because it was in the IEP, the occupational therapy, they didn't provide it. So this is not like the parents were challenging a lack of OT in the IEP. They said the child was going to get occupational therapy at home and didn't get that. And they said the child was going to get that. And then towards the end of the school year, cumulatively, the child didn't get that occupational therapy for the year. There have been cases where an IHO says if an occupational therapist quits and you don't have that service for four or five weeks, that's not a denial of fate. because you generally have the service. Here, it was determined that there was a denial of fate because of the number of months the child didn't receive the therapy at home. So I'm not necessarily asking you to go back and look at those acts individually, but this was timely file challenging the IEP. The hearing was about what happened the entire school year. It wasn't otherwise limited. Thank you, Counselor. Thank you. I appreciate the arguments of both sides. The matter is submitted and taken under advisement.